JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Rapheal Gabay, D.O. and Gabay, Schwartz, Ent and Associates, P.C.

### DEFENDANTS
Glen Josephs, CPA and Friedman LLP

**(b)** County of Residence of First Listed Plaintiff    Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Burlington, New Jersey
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David S. Sherman, Esquire
Solomon, Sherman & Gabay
1628 JFK Boulevard, Ste. 2200, Philadelphia, PA 19103

Attorneys *(If Known)*
Wendy D. Testa, Esquire
Wilson Elser Moskowitz Edelman & Dicker, LLP
Independence Square West, The Curtis Center, Ste 1130E, Phila., PA

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☒ 360 Other Personal Injury<br>☐ 362 Personal Injury - Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*
☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Professional Negligence Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $    In Excess of $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
10/31/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

| | | |
|---|---|---|
| Rapheal Gabay, D.O. AND Gabay, Schwartz, Ent and Associates, P.C. | : | CIVIL ACTION |
| v. | : | |
| Glen Josephs, CPA AND Friedman LLP | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (X )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( )

| | | |
|---|---|---|
| <u>10/31/12</u> | <u>Wendy D. Testa, Esquire</u> | Glen Josephs, CPA and Friedman LLP |
| **Date** | **Attorney-at-law** | **Attorney for** Defendants |
| <u>215-627-6900</u> | <u>215-627-2665</u> | Wendy.Testa@wilsonelser.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 9500 Roosevelt Boulevard, Philadelphia, PA 19115

Address of Defendant: 406 Lippincott Drive, Suite J, Marlton, New Jersey 08003

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐  No☒

Does this case involve multidistrict litigation possibilities?          Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?          Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

**B.** *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
     (Please specify)  Professional Malpractice

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*
I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _____          _____          _____
                              Attorney-at-Law                    Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/31/12          _____          81705
                         Attorney-at-Law                 Attorney I.D.#
                         Wendy D. Testa, Esquire

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAPHEAL GABAY, D.O     :
9500 Roosevelt Blvd.      :  CIVIL ACTION
Philadelphia, PA 19115     :
                :
and              :
                :  NO.:
GABAY, SCHWARTZ, ENT AND  :
ASSOCIATES, P.C.      :
9500 Roosevelt Blvd.      :
Philadelphia, PA 19115     :
                :
Plaintiffs         :
                :
                :
     v.        :
                :
GLENN JOSEPHS, CPA    :
Friedman LLP       :
406 Lippincott Drive, Suite J   :
Marlton, NJ 08003      :
                :
and              :
                :
FREIDMAN LLP      :
Friedman LLP       :
406 Lippincott Drive, Suite J   :
Marlton, NJ 08003      :
                :
    Defendants    :

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441, Defendant Glenn Josephs, CPA (herein after "Defendant"), by his undersigned counsel, hereby removes this action to the United States District Court for the Eastern District of Pennsylvania from the Philadelphia County Court of Common Pleas on the following grounds:

   1.  Plaintiffs, Raphael Gabay and Gabay, Schwartz, Ent and Associates, P.C., (herein after collectively "Plaintiffs") commenced this civil action via Complaint filed in

the Philadelphia Court of Common Pleas on or about October 2, 2012.  A true and correct copy of the Plaintiffs' Complaint is attached hereto as Exhibit "A."

2.      This is a civil action in which this court could have had original jurisdiction under 28 U.S.C. §1441, and which may be removed to this court by Defendant pursuant to the provisions of 28 U.S.C. §1332(a)(1) in that it is a civil action between citizens of different states, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3.      This action is therefore removable under 28 U.S.C. § 1441(a) and (b).

4.      Inasmuch as this Notice of Removal is being filed within thirty (30) days of service of the complaint, it is timely under 28 U.S.C. § 1446(b).

5.      Plaintiffs avers in their complaint that this litigation arises from professional instruction and information given to Plaintiffs from Defendants in 2005 regarding potential tax shelter and retirement plans.

6.      The Complaint alleges that Plaintiffs relied on the representations of both Defendants as to the potential tax shelter and retirement plans, and their compliance with IRS rules and regulations.

7.      The Complaint further alleges that Plaintiffs were subsequently audited and fined due to their failure to file certain necessary papers.

8.      Plaintiff Raphael Gabay, D.O. is an adult individual and citizen of the Commonwealth of Pennsylvania with a mailing address at 9500 Roosevelt Boulevard, Philadelphia, PA 19115.

763643.1

9.      Plaintiff Gabay, Schwartz, Ent and Associates, P.C. is a corporation incorporated under the laws of the Commonwealth of Pennsylvania with a mailing address at 9500 Roosevelt Boulevard, Philadelphia, PA 19115.

10.     Defendant Glenn Josephs, CPA is an adult individual and citizen of the State of New Jersey with a mailing address at 406 Lippincott Drive, Suite J, Marlton, New Jersey 08003.

11.     Defendant Freidman, LLP is a New Jersey Limited Liability Partnership with a mailing address at 406 Lippincott Drive, Suite J, Marlton, New Jersey 08003.

11.     The amount in controversy for the matter is in excess of the jurisdictional limit of $75,000, exclusive of costs and counsel fees. See Exhibit "A."

12.     As evidenced by the consent form attached hereto as Exhibit "B," Defendant Freidman, LLP consents to the removal of this matter to this court.

13.     Pursuant to the provisions of 28 U.S.C. § 1446(a), copies of all state court papers which have been served on the defendant at, or before, the time of removal are attached. See Exhibit "A."

14.     Upon filing the Petition for Removal in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania, defendant has given notice to counsel for the plaintiffs and with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania.

WHEREFORE, Defendant, Glenn Josephs, CPA, respectfully requests that this action be removed to this court and proceed as though originally commenced herein.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

BY:___/s/ Wendy D. Testa_____
          Wendy D. Testa, Esquire
          Atty. I.D. No.: 81705
          Attorney for Defendant,
          Glenn Josephs, CPA
          The Curtis Center, Suite 1130 East
          Independence Square West
          Philadelphia, PA 19106
          Phone: (215) 627-6900
          Facsimile: (215) 627-2665
          Wendy.Testa@wilsonelser.com

Dated: October 31, 2012

763643.1

## <u>CERTIFICATE OF SERVICE</u>

I, Wendy D. Testa, Esquire, attorney for Defendant, Glenn Josephs, CPA, certify that I have served a true and correct copy of the foregoing Notice of Removal by filing the same on the court's ECF system on the date referenced below.


_____*/s/Wendy D. Testa*_____
Wendy D. Testa, Esquire


Dated: <u>October 31, 2012</u>

763643.1

# EXHIBIT "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

OCTOBER 2012     000444

| | |
|---|---|
| **PLAINTIFF'S NAME**<br>RAPHAEL GABAY DR. | **DEFENDANT'S NAME**<br>GLEN JOSEPHS |
| **PLAINTIFF'S ADDRESS**<br>9500 ROOSEVELT BLVD.<br>PHILADELPHIA PA 19115 | **DEFENDANT'S ADDRESS**<br>FRIEDMAN LLP 408 LIPPINCOTT DR., SUITE J<br>MARLTON NJ 08003 |
| **PLAINTIFF'S NAME**<br>GABAY, SCHWARTZ, ENT AND ASSOCIATES, P.C. | **DEFENDANT'S NAME**<br>FRIEDMAN LLP |
| **PLAINTIFF'S ADDRESS**<br>9500 ROOSEVELT BLVD.<br>PHILADELPHIA PA 19115 | **DEFENDANT'S ADDRESS**<br>406 LIPPENCOTT DR., SUITE J<br>MARLTON NJ 08003 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |

| TOTAL NUMBER OF PLAINTIFFS<br>2 | TOTAL NUMBER OF DEFENDANTS<br>2 | COMMENCEMENT OF ACTION<br>[X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |
|---|---|---|

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce    [ ] Settlement<br>[ ] Minor Court Appeal  [ ] Minors<br>[ ] Statutory Appeals  [ ] W/D/Survival |

**CASE TYPE AND CODE**
4A - MALPRACTICE - ACCOUNTING

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

FILED
PRO PROTHY
OCT 02 2012
J. MURPHY

IS CASE SUBJECT TO COORDINATION ORDER?
YES    NO

TO THE PROTHONOTARY:
Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: RAPHAEL GABAY DR., GABAY, SCHWARTZ, ENT AND ASSOCIATES, P.C.
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>DAVID B. SHERMAN | ADDRESS<br>8 PENN CENTER<br>1628 JFK BOULEVARD |
|---|---|
| PHONE NUMBER<br>(215) 665-1100 | FAX NUMBER<br>(215) 665-8471 | SUITE 2200<br>PHILADELPHIA PA 19103 |
| SUPREME COURT IDENTIFICATION NO.<br>36437 | E-MAIL ADDRESS<br>tdicostanza@solomonsherman.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*DAVID SHERMAN* | DATE SUBMITTED<br>Tuesday, October 02, 2012, 02:29 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**SOLOMON, SHERMAN & GABAY**
DAVID B. SHERMAN, ESQUIRE
Identification No. 36437
1628 JFK Boulevard, Suite 2200
Philadelphia, PA 19103
(215) 665-1100

This is a Major Jury Case.

Attorneys

---

RAPHAEL GABAY, D.O.
9500 Roosevelt Blvd.
Philadelphia, PA 19115
and
GABAY, SCHWARTZ, ENT AND
ASSOCIATES, P.C.
9500 Roosevelt Blvd.
Philadelphia, PA 19115

:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

vs.

:

OCTOBER TERM, 2012

GLEN JOSEPHS, CPA
Friedman LLP
406 Lippincott Drive, Suite J
Marlton, NJ 08003
and
FRIEDMAN LLP
406 Lippincott Drive, Suite J
Marlton, NJ 08003

:
:
:
:
:
:
:
:
:
:

NO:

COMPLAINT – CIVIL ACTION
2V – Motor Vehicle Accident

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 191
Telephone: 215-238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparescencia escrita o en persona o con un abogada y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASESTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: 215-238-17011

Case ID: 121000444

**SOLOMON, SHERMAN & GABAY**
DAVID B. SHERMAN, ESQUIRE
Identification No. 36437
1628 JFK Boulevard, Suite 2200
Philadelphia, PA 19103
(215) 665-1100

This is a Major Jury Case.

Attorneys for Plaintiffs

| | |
|---|---|
| RAPHAEL GABAY, D.O.<br>9500 Roosevelt Blvd.<br>Philadelphia, PA 19115<br>and<br>GABAY, SCHWARTZ, ENT AND<br>ASSOCIATES, P.C.<br>9500 Roosevelt Blvd.<br>Philadelphia, PA 19115 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| vs. | SEPTEMBER TERM, 2012 |
| GLEN JOSEPHS, CPA<br>Friedman LLP<br>406 Lippincott Drive, Suite J<br>Marlton, NJ 08003<br>and<br>FRIEDMAN LLP<br>406 Lippincott Drive, Suite J<br>Marlton, NJ 08003 | NO: |

COMPLAINT – CIVIL ACTION
PROFESSIONAL MALPRACTICE
<u>4Y – Other</u>

     1.    Plaintiff, Raphael Gabay, D.O., (hereinafter "Gabay") is an adult individual and physician/owner of Gabay, Schwartz, ENT and Associates, P.C. at all times pertinent hereto providing medical services at the above-listed address.

     2.    Plaintiff, Gabay, Schwartz, ENT and Associates, P.C. (hereinafter "GSA") is a Pennsylvania corporation and other medical care provider authorized to do business in the Commonwealth of Pennsylvania at the above-listed address.

Case ID: 121000444

3.    Defendant, Glen Josephs (hereinafter "Josephs") is a Certified Public Accountant and provides accounting services in the Commonwealth of Pennsylvania with offices at the above-listed address.

4.    Defendant, Friedman LLP is a New Jersey corporation and/or other business providing accounting services in Pennsylvania at the above-listed address.

5.    At all times pertinent hereto, and for years commencing in approximately 2000, Defendants were retained by Plaintiffs to provide complete accounting services, including but not limited to preparing tax returns, financial statements, providing financial and tax advice, and all matters relating to the financial business of the Plaintiffs.

6.    At all times pertinent hereto, the Defendants provided accounting and tax services to the Plaintiffs specifically with regard to potential tax shelters and retirement plans.

7.    Approximately in the year 2005, the Defendants represented to the Plaintiffs that they should participate in tax shelter-employer contribution plans for retirement purposes called a BETA Individual Employer Welfare Benefit Plan and trust - Plan 1 (hereinafter referred to as "the Plan").

8.    At all times pertinent hereto, the Defendants represented to the Plaintiffs that the Plans would provide the Plaintiffs with a legal tax shelter in the form of a retirement contribution which would reduce tax liability and specifically "shelter" income.

9.    At all times pertinent hereto, the Defendants instructed, informed and advised the Plaintiffs that the aforesaid Plans satisfied all tax regulations, codes, laws and statutes, and would comply with all Internal Revenue Service regulations.

Case ID: 121000444

10.    At all times pertinent hereto, the Plaintiffs totally relied upon those material representations in all respects and specifically as to the legitimate status of the Plans and its compliance with IRS rules and regulations.

11.    From 2004-2008, the Plaintiffs consistent with instructions from the Defendants contributed $250,000 and complied with all requirements to maintain the legitimate and effective status of the Plans as prescribed by the Defendants.

12.    In March of 2008, the Plaintiffs were informed by the Internal Revenue Service that the Plans were subject to an audit.

13.    Upon receipt of that information, Plaintiffs requested the Defendants to represent them in these matters, and defend the audit.

14.    The audit occurred over the time period from 2008 to 2012, wherein the Plaintiffs were required to expend substantial time and money in providing various documentation and information as requested from the Internal Revenue Service.

15.    During the course of the audit, Plaintiffs also retained the services of the law firm of Michelle Espey, Esquire to assist in defending the audit and challenge the allegations made by the Internal Revenue Service, to disqualify and otherwise penalize Plaintiffs.

16.    During the course of the IRS audit, the IRS alleged and concluded that the taxpayers (plaintiffs in this action) failed to file a basic but necessary form to maintain legal status of the Plans.

17.    As a result of the aforesaid conclusion, the Plaintiffs were fined substantial sums in penalty outlined specifically hereinafter.

18.    All actions of the Defendants were committed by the Defendants through their agents, servants, workmen and employees.

## COUNT I
### Raphael Gabay, M.D. vs. Defendant, Glen Josephs, CPA and Friedman LLP

19.    Plaintiff incorporates by reference each and every averment contained in paragraphs 1 through 18 inclusive of the instant Complaint as though the same were hereinafter fully set forth.

20.    In January of 2012, after much negotiation, counsel fees, time and expense, the Plaintiffs were requested to pay penalties in the amount of $85,000.00.

21.    During the course of the IRS audit, the IRS alleged and concluded that the Plaintiff, Gabay failed to file a form 8886 for 2007.

22.    With respect to Plaintiff, Gabay, individually, the IRS subsequent to the audit, rendered the following conclusions:

(a)    Fined Plaintiff, Raphael Gabay $85,000 (reduced originally from $100,000) rendering the following conclusions:

(b)    Failing to disclose participation by filing form 8886 with Office of Tax Administration for year December, 2007, and such was fined $80,305.00. See Exhibit "B", IRS Conclusion;

(c)    Failing to attach form 88886. See Exhibit "B".

23.    As a result of the audit, as contained in reports generated by the IRS, it was rendered crystal clear that Defendants failed to file a simple form on behalf of all of the Plaintiffs termed "Form 8886" which would have effectively notified the IRS of the

deduction(s) for the years in question, thus triggering the aforesaid penalty and expenses.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly, severally and singularly in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## COUNT II
### Gabay Schwartz ENT & Associates, P.C. vs. Defendant, Glen Josephs, CPA and Friedman LLP

24.    Plaintiff incorporates by reference each and every averment contained in paragraphs 1 through 24 inclusive of the instant Complaint as though the same were hereinafter fully set forth.

25.    On or about (date), after much negotiation, counsel fees, time and expense, the Plaintiff, GSA were requested to pay penalties in the amount of Ten Thousand ($10,000.00) Dollars.

26.    During the course of the IRS audit, the IRS alleged and concluded that the Plaintiff, GSA failed to file a form 8886 for 2007.

27.    With respect to Plaintiff, GSA, the IRS subsequent to the audit, rendered the following conclusions:

(a)    Fined Plaintiff, Gabay $10,000 rendering the following conclusions:

(b)    Failing to disclose participation by filing form 8886 with Office of Tax Administration for year December, 2007, and such was fined Ten Thousand ($10,000.00) Dollars.  See Exhibit "B", IRS Conclusion.

(c)    Failing to attach form 88886.  See Exhibit "B".

Case ID: 121000444

28.    As a result of the audit, as contained in reports generated by the IRS, it was rendered crystal clear that Defendants failed to file a simple form on behalf of all of the Plaintiffs termed 8886 which would have effectively notified the IRS of the deduction(s) for the years in question thus triggering the aforesaid penalties and expenses.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly, severally and singularly in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

### Count III
### Negligence

29.    Plaintiffs incorporate paragraphs 1-28 of this Complaint as if the same as though the same were set forth fully herein.

30.    At all times pertinent hereto the Defendants held themselves as professional experts in the area of accounting and providing financial advice with regard to retirement plans and tax shelters.

31.    At all times pertinent hereto the Plaintiffs collectively relied upon the Defendants with regards to their knowledge and expertise concerning the above-referenced matters.

32.    At all times pertinent hereto the Defendants rendered advice as experts in the area of accounting and with regards to all specific matters concerning the Plans set forth above.

33.    In addition, at all times pertinent hereto, the Defendants ensured the Plaintiffs would satisfy all legal requirements with regards to maintaining legitimate

Case ID: 121000444

status of the Plans, and specifically would file **all appropriate documentation to maintain the status of the plan in a legal and compliant manner.**

34.    In addition, the Defendants were specifically negligent and careless in the following manner:

(a)    Failing to properly advise the Plaintiffs with respect to the legitimacy and compliance and authenticity of the Plans for the purposes intended;

(b)    Failing to provide proper and adequate advice with regards to the suitability and acceptance by the IRS with regards to the Plans;

(c)    Failing to investigate and/or research the legitimacy, legality, and acceptance of the Plans with regards to IRS regulations and protocol;

(d)    Failing to properly advise the Plaintiffs of the serious potential and possibility of expenses, audit and challenges by the IRS of the legitimacy of the aforesaid Plans.

(e)    Failing to provide the Plaintiffs with alternatives that would have been either less risky or without any risks avoiding expense, audit and the penalties as set forth above;

(f)    Failing to advise the Plaintiffs with respect to all proper requirements of the IRS to maintain the legitimacy and compliance of the Plans;

(g)    Failing to file all proper filings, including but not limited to Form 8886 for both Plans, thus resulting in serious expenses, penalties and losses;

(h)    Failing to file and comply with other requirements regarding the Plans;

(i)      Failing to present the Plaintiffs with viable alternatives which would have been compliant with all IRS rules and regulations;

(j)      Receipt of financial enumeration in the form of benefits, fees, commissions and payments without proper disclosure and in conflict with the interests of the Plaintiffs;

(k)      Failing to monitor, advise, file and take all appropriate action to the benefit of the Plaintiffs with regards to tax shelters.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly, severally and singularly in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

## Count III
## Negligent Representation

35.     Plaintiffs incorporate paragraphs 1-34 of this Complaint as if the same as though the same were set forth fully herein.

36.     At all times pertinent hereto the Defendants represented the legitimacy and compliance of the Plans.

37.     The Plaintiffs relied upon Defendants' representations and participated in the Plans.

38.     The misrepresentations as to their legitimate status and that the Defendants would file all proper forms was substantial and material, resulting in harm to the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly, severally and singularly for the misrepresentation in a sum in excess of Fifty Thousand ($50,000.00) Dollars.

BY: _____

DAVID B. SHERMAN, ESQUIRE
Attorney for Plaintiffs

Dated: October 2, 2012

## VERIFICATION

I, RAPHAEL GABAY, hereby verify that the statements made in the foregoing Civil Action Complaint, are true and correct to the best of my information, knowledge and belief after reasonable inquiry. I understand that statements made herein are subject to the penalties of 18 Pa C.S.A. Section 4904, relating to unsworn falsification to authorities.

RAPHAEL GABAY

DATED: _9 · 27 · 12_

Case ID: 121000444

# EXHIBIT "A"

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

| Year | 2007 |
|---|---|
| Penalty per Section 6707A | $85,305.00 |

## ISSUE

Whether Raphael Gabay (hereinafter the "Taxpayer") is subject to the I.R.C. § 6707A[1] penalty for failure to disclose a reportable transaction pursuant to section 6011 and the associated regulations?

    a)  Is the BETA Individual Employer Welfare Benefit Plan and Trust (hereinafter the "Plan") the same as, or substantially similar to, the transaction described in IRS Notice 2007-83?

    b)  Has the Taxpayer participated in a listed transaction during the tax year(s) ended December 31, 2005, December 31, 2006 and December 31, 2007?

    c) Did the Taxpayer fail to properly disclose its participation in accordance with Treasury Regulation section 1.6011-4 for the tax year ended December 31, 2007 by failing to file Form 8886:

    (1)    With its Income Tax Return, Form 1040, for the year shown above; and/or,

    (2)    With the Office of Tax Shelter Analysis (hereinafter "OTSA").

## FACTS

    The issues in this case arise from Gabay Schwartz Ent & Associates Inc.'s (hereinafter the "Employer") participation in the BETA Multiple Employer Death Benefit Plan and Trust ("Multiple Employer Plan" or "MEP") and subsequent adoption of the BETA Individual Employer Welfare Benefit Plan and Trust ("Single Employer Plan" or "SEP").

    The Employer is a S Corporation. The individual Taxpayer's ownership is listed below:

| Shareholder/ Partner Name | Plan Participant ?<br>Yes/No | Ownership % | |
|---|---|---|---|
| Raphael Gabay | Yes | 74.0% | 2005, 2006 |
| | | 93.6% | 2007 |

[1] All code sections are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue.

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE

Case ID: 121000444

| Form 886-A (REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

Thus, the Beta Plan arrangement has all four of the elements listed in Notice 2007-83. Accordingly, the Beta Plan arrangement is the same as, or substantially similar to, the transaction described in Notice 2007-83.

The Employer entered the BETA Individual Employer Welfare Benefit Plan on or after February 28, 2003. As a result of the deductions claimed by the Employer with respect to its contributions in the Plan, the amount of income flowing through to the Taxpayer's individual return, Form 1040, was reduced and the Taxpayer benefited from the Employer's participation in the Plan. Thus, the Taxpayer participated in a listed transaction during the tax year(s) ended December 31, 2005, December 31, 2006 and December 31, 2007. Thus, the Taxpayer had a requirement to attach a Form 8886, Reportable Transaction Disclosure Statement to the Taxpayer's return for the tax year ended December 31, 2007 and file a copy of the Form 8886 with the Office of Tax Shelter Analysis (OTSA).

The Employer did not attach the Form 8886 Reportable Transaction Disclosure Statement to its return for the 2007 tax year.

The Employer did not file a copy of the Form 8886 Reportable Transaction Disclosure Statement to Office of Tax Shelter Administration for the 2007 year, the first year required per notice 2007-83.

The Taxpayer is subject to the penalty under section 6707A for the tax year(s) ended December 31, 2007.

CONCLUSION

The taxpayer participated in a Listed Transaction and did not disclose such participation by properly filing Form 8886. The taxpayer's failure to disclose was due to the failure to: 1) attach the Form 8886, Reportable Transaction Disclosure Statement, to his return for the years December 31, 2007, AND 2) file a copy of the Form 8886, Reportable Transaction Disclosure Statement, to Office of Tax Shelter Administration for the years December 31, 2007.

Accordingly, Taxpayer is liable for the penalty under section 6707A in the amount of $85,305.00 for the tax year ended December 31, 2007.

One or more worksheets are attached showing the calculation of the penalty.

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

| Sh/Employee #2 | Yes | 26.0%  2005, 2006<br>6.4%  2007 |
|---|---|---|

The Employer participated in the Multiple Employer Plan prior to the amendment of the MEP and creation and adoption of the Single Employer Plan, and the concurrent allocation of MEP assets to the single employer plans. The Employer adopted the Multiple Employer Plan by executing an Adoption Agreement effective n/a. A copy of the Adoption Agreement, along with other information was requested and never provided.

Under the Multiple Employer Plan, current life insurance protection was provided to covered employees. A covered employee designated the beneficiary of the death proceeds payable upon the employee's death. The Multiple Employer Plan purported to be a welfare benefit fund that met the exception provided by section 419A(f)(6) from contribution deduction limitations imposed under sections 419 and 419A. Section 419A(f)(6) applies only to contributions to a plan to which more than one employer contributes and to which no employer normally contributes more than 10 percent of the total contributions contributed to the plan by all employers. Furthermore, the exception applies only if the plan does not maintain experience-rating arrangements with respect to individual employers. A plan does not meet the requirements of section 419A(f)(6) unless 10 or more employers contribute to a single pool of funds, and that single pool of funds is for the use of the group of employers as a whole (e.g., to pay the claims of all employees covered under the plan). Booth et al. v. Commissioner, 108 T.C. 524 (1997).

Participating employers made contributions to the Multiple Employer Plan, which the Plan Trustee used to purchase life insurance policies from third-party insurance carriers on the lives of the employer's employees, owners, or other persons. Under the terms of the arrangement, the policies were owned by the Beta Multiple Employer Welfare Benefit Plan and Trust, which utilized a non-exempt trust to hold the plan assets. Each covered employee selected the beneficiary of the death benefits payable under the MEP upon the employee's death. The insurance policies were generally types of life insurance policies in which a portion of policy premiums are allocated to a cash value account within the policy that accumulates as premiums are paid and interest or other investment accruals are credited by the issuer. These types of policies are commonly referred to as Whole Life, Universal Life (UL) or Variable Universal Life (VUL).

The Plan Sponsor, Designs for Finance, Inc. ("DFF"), amended the Multiple Employer Plan to create the Single Employer Plan, an arrangement under which a separate single employer plan is provided for each participating employer. A common trust holds the plan assets of each employer's single employer plan. The Multiple Employer Plan assets allocated to the individual single employer plans remained with the Trustee of the Multiple Employer Plan, North Fork Bank, and a "common administration trust" was established to hold the plan assets of each employer's single employer plan. However, under the Single

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

Employer Plan, there is separate accounting with respect to the participants of each employer's single employer plan.

The Multiple Employer Plan assets allocated to single employer plans were no longer subject to claims relating to employees of other employers. In other words, assets attributable to amounts previously contributed to the Multiple Employer Plan (as well as assets attributable to subsequent contributions to an employer's single employer plan) were held for the exclusive benefit of the employee(s) of the employer who had contributed such amounts. Further, these assets were held without any risk, which purportedly existed under the Multiple Employer Plan, that the assets could be used for the employees of other employers.

Both the Multiple Employer Plan and the Single Employer Plan provided death benefits funded through cash value life insurance policies. Although the Beta Individual Employer Arrangement allowed for the provision of other benefits, a July 13, 2005, opinion letter to DFF states that as of that date, the Single Employer Plan provided no sick and accident benefits, no disability or severance benefits, or any "other benefits" similar to life, sick or accident benefits, and there was no intention to provide such benefits.

There are at least three Plan and Trust Agreements for the Beta Individual Employer Welfare Benefit Plan and Trust dated January 1, 2003. All versions are signed by the Plan Sponsor, DFF, and the Trustee, North Fork Bank; two versions provide an execution date of December 1, 2003, and the third is undated. The signatures are unique to each document. There is also an amended Single Employer Plan and Trust Agreement dated January 1, 2006, which was executed on December 30, 2006.

A Multiple Employer Welfare Benefit Trust Severance Agreement effective January 1, 2003, was signed by DFF, North Fork Bank and Pointe Benefit Consultants. There is no date on the Agreement that corresponds to the signatures and no information has been provided regarding the date the Severance Agreement was signed. The Severance Agreement states that the Beta Multiple Employer Plan "contains more favorable features and flexible administration terms for covered employers and their participating employees, than would a Plan which meets and complies with all of the requirements of the regulations" for section 419A(f)(6). As a result, the parties to the Agreement have decided "to sever the existing BETA Plan and Trust into separate individual employer plans maintained under a common administration trust." The parties to the Agreement desire "to modify their participation in the BETA Plan and continuing under the newly established single employer format with Master Trust Agreement." The Agreement further states that Pointe Benefit "established a common 419(e) trust for Plan years subsequent to December 31, 2003," contributions to which "are subject to the funding limitations set forth under Section 419A(c) of the Code, as actuarially determined by an actuary."

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

Subsequent to the adoption of the Single Employer Plan, the BETA Plan Trustee requested that the ownership of the following life insurance policies be transferred from the "North Fork Bank as Trustee under the BETA Multiple Employer Welfare Benefit Plan & Trust dated 8/24/94 -- 275 Broadhollow Road -- Melville, NY 11747 TIN 11-6487640" to the "North Fork Bank as Trustee under the BETA Individual Employer Welfare Benefit Plan & Trust dated 1/1/03 -- 18530 Mack Ave., Suite 319 -- Grosse Pointe Farms, MI 48236 TIN 11-3244499."

| Covered Employee | Insurance Co. | Policy # | Date Beneficiary<br>Change Was Requested |
|---|---|---|---|
| Raphael Gabay | Guardian | 4046410 | n/a |
| Employee #2 | Guardian | n/a | n/a |
| | | | |

The Employer contributed the following amounts to the Beta Individual Employer Welfare Benefit Plan:

| Year | Contribution<br>(net of annual fee) |
|---|---|
| 2005 | $178,784 |
| 2006 | $250,000 |
| 2007 | $0 |

The Employer deducted the following amounts on its Form 1120S in regard to the contributions it made to the Plan:

| Year | Deduction | Line description<br>(if known) |
|---|---|---|
| 2005 | Pension, Profit<br>Sharing, Etc. | $178,784 |
| 2006 | Pension, Profit<br>Sharing, Etc. | $250,000 |
| | | |

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

As a result of these deductions, the amount of income flowing through to the Taxpayer's Individual Return, Form 1040, was reduced and the Taxpayer benefited from the Employer's participation in the Plan.

The Employer had the ability to terminate its participation and cause the distribution of the insurance policies continued under the Single Employer Plan. The Beta Individual Employer Welfare Benefit Plan and Trust Agreement (the "Beta Individual Employer Agreement" or the "Agreement"), dated December 1, 2003, states that, under certain circumstances, the Employer "shall have the right to terminate [the] Plan and Trust as a withdrawal by delivering written notice of such termination to the Recordkeeper to be forwarded to the Trustee with properly authorized written directives." Beta Individual Employer Agreement, Article 6.03. The circumstances required are any which meet one of five criteria pertaining to the status or operation of the employer's business. One of the criteria is merely that "[a] determination of the majority in ownership interest of the employer's equity by vote and value that the continuation of the Plan is not in the best interests of the Employer and its employees on an ongoing basis" has been made. Id. Thus, even assuming that the rules put forth in the Beta Individual Employer Agreement are followed in practice, an employer can terminate its participation in the Beta Individual Employer Arrangement (and thus terminate its single employer plan) at any time by providing written notice to the Arrangement.

The Beta Individual Employer Agreement provides for the distribution of the assets of the trust associated with an employer's single employer plan, upon an employer's termination of participation in the Beta Individual Employer Arrangement. See Beta Individual Employer Agreement Article 6.03(c). Under the Agreement, the distribution would be determined by a ratio based on either (1) an employee's PS-58 costs as compared to the total PS-58 costs of all covered employee's, or (2) an employee's compensation as compared to the total compensation of all covered employees. See Agreement Article 6.03(c)(iii).

The Employer did not attach the Form 8886 Reportable Transaction Disclosure Statement to its return for the 2007 tax year.

The Employer did not file a copy of the Form 8886 Reportable Transaction Disclosure Statement to Office of Tax Shelter Administration for the 2007 year, the first year required per notice 2007-83.

LAW

Section 6707A(a) provides that "any person who fails to include on any return or statement any information with respect to a reportable transaction which is required under section 6011 to be included with such return or statement shall pay a penalty in the amount determined under subsection (b)."

| Form 886-A | EXPLANATION OF ITEMS | EXHIBIT |
| (REV. JANUARY 1994) | Rev. January 2008 | |

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
| Raphael Gabay | 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 | December 31, 2007 |

Section 6707A(b) imposes a penalty for failing to disclose participation in a "listed transaction" in the amount of 75 percent of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal tax purposes). The amount of the penalty shall not exceed $200,000 and $100,000 in the case of a natural person and shall not be less than $10,000 and $5,000 in the case of a natural person for assessments made after December 31, 2006.

Section 6707A (d) (1) grants the Commissioner authority to rescind all or a portion of any penalty imposed under section 6707A if (1) the violation relates to a reportable transaction that is not a listed transaction and (2) rescission of the penalty would promote compliance with the requirements of the Code and effective tax administration.

Section 6707A(c)(2) defines the term "listed transaction" to mean a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011."

For Transactions Entered Into On Or After February 28, 2003 (Taxpayers May Rely on These Regulations For Transactions Entered Into On Or After January 1, 2003) and Before August 3, 2007 (T.D. 9046)

All references to § 1.6011-4 are to that regulation as modified by TD 9046, 2003-1 C.B. 614.

Every taxpayer that has participated, as described in § 1.6011-4(c)(3), in a reportable transaction within the meaning of § 1.6011-4(b) and who is required to file a tax return must attach to its return for the taxable year described in § 1.6011-4(e) a disclosure statement in the form prescribed by §1.6011-4(d). Treas. Reg. § 1.6011-4(a).

A reportable transaction is a transaction described in § 1.6011-4(b)(2) through (7). The term transaction includes all of the factual elements relevant to the expected tax treatment of any investment, entity, plan, or arrangement, and includes any series of steps carried out as part of a plan. There are six categories of reportable transactions: listed transactions, confidential transactions, transactions with contractual protection, loss transactions, transactions with a significant book-tax difference, and transactions involving a brief asset holding period. Treas. Reg. § 1.6011-4(b)(1).

A listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction. Treas. Reg. § 1.6011-4(b)(2).

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

A taxpayer has participated in a listed transaction if the taxpayer's tax return reflects tax consequences or a tax strategy described in the published guidance that lists the transaction under § 1.6011-4 (b)(2). A taxpayer also has participated in a listed transaction if the taxpayer knows or has reason to know that the taxpayer's tax benefits are derived directly or indirectly from tax consequences or a tax strategy described in published guidance that lists a transaction under § 1.6011-4(b)(2). Published guidance may identify other types or classes of persons that will be treated as participants in a listed transaction. Treas. Reg. § 1.6011-4(c)(3)(i)(A).

The term substantially similar includes any transaction that is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy. Receipt of an opinion regarding the tax consequences of the transaction is not relevant to the determination of whether the transaction is the same as or substantially similar to another transaction. Further, the term substantially similar must be broadly construed in favor of disclosure. Treas. Reg. § 1.6011-4(c)(4).

The disclosure statement for a reportable transaction, Form 8886 "Reportable Transaction Disclosure Statement" (or successor form), must be attached to the taxpayer's tax return for each taxable year for which a taxpayer participates in a reportable transaction. In addition, a copy of the disclosure statement must be sent to OTSA at the same time that any disclosure statement is first filed with the taxpayer's tax return.

If a transaction becomes a listed transaction after the filing of the taxpayer's final tax return reflecting either tax consequences or a tax strategy described in the published guidance listing the transaction (or a tax benefit derived from tax consequences or a tax strategy described in the published guidance listing the transaction) and before the end of the statute of limitations period for that return, then a disclosure statement must be filed as an attachment to the taxpayer's tax return next filed after the date the transaction is listed. Treas. Reg. § 1.6011-4(e)(2)(i).

Example From the Regulations - Treasury Regulation § 1.6011-4(e)(4) reads as follows:

(4) Example. The following example illustrates the application of this paragraph (e):
Example. In January of 2004, F, a domestic calendar year corporation, enters into a transaction that is not a listed transaction when entered into and is not a transaction described in any of the paragraphs (b)(3) through (7) of this section. All the tax benefits from the transaction are reported on F's 2004 tax return. On March 1, 2008, the IRS publishes a notice identifying the transaction as a listed transaction described in paragraph (b)(2) of this section. Thus, upon issuance of the notice, the transaction becomes a reportable transaction described in paragraph (b) of this section. The statute of limitations for F's 2004 taxable year is still open. F is required to file Form 8886 for the transaction as an attachment to F's next-filed Federal income tax return

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

and must send a copy of Form 8886 to OTSA. If F's 2007 Federal income tax return has not been filed on or before the date the Service identifies the transaction as a listed transaction, Form 8886 must be attached to F's 2007 return and at that time a copy of Form 8886 must be sent to OTSA.

## Notice 2007-83

In Notice 2007-83, the IRS alerted taxpayers and their representatives to some of the significant tax problems that may be raised by certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that are being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits. The notice alerts taxpayers and their representatives that those transactions are tax avoidance transactions and identifies certain transactions using trust arrangements involving cash value life insurance policies, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations and §§ 6111 and 6112 of the Code.

Notice 2007-83 describes generally arrangements that are sometimes referred to by the persons advocating their use as "single employer plans" and sometimes as "419(e) plans." Those advocates claim that employers' contributions to the trust are deductible under sections 419 and 419A as qualified costs2 but that there is not a corresponding inclusion in the owner's income.

Under these arrangements, the plan and trust documents indicate that the plan provides benefits such as current death benefit protection and certain welfare benefits to covered employees (including those employees who are also owners of the business). The arrangement provides that the benefits are payable while the employee is actively employed by the employer. The employer's contributions are often based on premiums charged for cash value life insurance policies. For example, contributions may be based on premiums that would be charged for whole life policies. As a result, the arrangements often require large employer contributions relative to the actual cost of the benefits currently provided under the plan.

Under these arrangements, the trustee uses the employer's contributions to the trust to purchase life insurance policies. The trustee typically purchases cash value life insurance policies on the lives of the employees who are owners of the business (and sometimes other key employees), while purchasing term life insurance policies on the lives of the other employees covered under the plan. It is anticipated that after a number of years the plan will be terminated and the cash value life insurance policies, cash, or other property held by the trust will be distributed to the employees who are plan participants at the time of the

---

2 Section 419(c)(1) of the Code generally describes qualified costs as the sum of qualified direct costs plus additions to qualified asset accounts.

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

termination. While a small amount may be distributed to employees who are not owners of the business, the timing of the plan termination and the methods used to allocate the remaining assets are structured so that the business owners and other key employees will receive, directly or indirectly, all or a substantial portion of the assets held by the trust.

In addition, Notice 2007-83 identifies certain arrangements as listed transactions. Notice 2007-83 states that any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as "listed transactions" for purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112, effective October 17, 2007:

(1)  The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.

(2)  For determining the portion of its contributions to the trust or other fund that are currently deductible the employer does not rely on the exception in § 419A(f)(5)(A) (regarding collectively bargained plans).

(3)  The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated either:

    (a)  within the policy (for example, a cash value life insurance policy); or

    (b)  outside the policy (for example, in a side fund or through an agreement outside the policy allowing the policy to be converted to or exchanged for a policy which will, at some point in time, have accumulated value based on the purported premiums paid on the original policy).

(4)  The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts:

    (a)  With respect to any uninsured benefits provided under the plan,

        (i)  an amount equal to claims that were both incurred and paid during the taxable year; plus

        (ii)  the limited reserves allowable under § 419A(c)(1) or (c)(3), as applicable, plus

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Raphael Gabay | TAX IDENTIFICATION NUMBER<br>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 | YEAR/PERIOD ENDED<br>December 31, 2007 |

(iii)     amounts paid during the taxable year to satisfy claims incurred in a prior taxable year (but only to the extent that no deduction was taken for such amounts in a prior year); plus

(iv)     amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to uninsured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(b)     With respect to any insured benefits provided under the plan,

(i)     insurance premiums paid during the taxable year that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(ii)     insurance premiums paid in prior taxable years that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

(iii)     amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to insured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

(c)     For taxable years ending prior to November 5, 2007, with respect to life insurance benefits provided through policies described in (3)(a) and (b) above, the greater of the following amounts:3

(i)     in the case of an employer with a taxable year that is the calendar year, the aggregate amounts reported by the employer as the cost of insurance with respect to such policies on the employees' Forms W-2 (or Forms 1099) for that year, plus an amount equal to the amounts that would have been reportable on the employees' Forms W-2 for that year, but for the exclusion under section 79 (relating to the cost of up to $50,000 of coverage); or, in the case of an employer with a taxable year other than the calendar year, the portions of the aggregate amounts reported by the employer on the Forms W-2 (or Forms 1099) as described in (i), above, (or that would have been reported absent the exclusion under § 79) that are properly allocable to the employer's taxable year; and

---

3 For taxable years ending on or after November 5, 2007, the amount under this (4)(c) is zero.

# EXHIBIT "B"

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

| Year | 2007 |
|---|---|
| Penalty per Section 6707A | - $10,000.00 |

## ISSUE

Whether Gabay Schwartz Ent & Associates PC (hereinafter the "Taxpayer" or the "Employer") is subject to the I.R.C. § 6707A[1] penalty for failure to disclose a reportable transaction pursuant to section 6011 and the associated regulations?

a)  Is the BETA Individual Employer Welfare Benefit Plan and Trust (hereinafter the "Plan") the same as, or substantially similar to, the transaction described in IRS Notice 2007-83?

b)  Has the Taxpayer participated in a listed transaction during the tax year(s) ended December 31, 2005, December 31, 2006 and December 31, 2007?

c)  Did the Taxpayer fail to properly disclose its participation in accordance with Treasury Regulation section 1.6011-4 for the tax year ended December 31, 2007 by failing to file Form 8886:

(1)    With its Income Tax Return, Form 1120S, for the year shown above; and/or,

(2)    With the Office of Tax Shelter Analysis (hereinafter "OTSA").


## FACTS

The issues in this case arise from Taxpayer's participation in the BETA Multiple Employer Death Benefit Plan and Trust ("Multiple Employer Plan" or "MEP") and subsequent adoption of the BETA Individual Employer Welfare Benefit Plan and Trust ("Single Employer Plan" or "SEP").

The Employer participated in the Multiple Employer Plan prior to the amendment of the MEP and creation and adoption of the Single Employer Plan, and the concurrent allocation of

---

[1] All code sections are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue.

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE<br>Case ID: I21000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

MEP assets to the single employer plans. The Taxpayer adopted the Multiple Employer Plan by executing an Adoption Agreement effective n/a. Note: A copy of the Adoption Agreement was requested and never provided.

Under the Multiple Employer Plan, current life insurance protection was provided to covered employees. A covered employee designated the beneficiary of the death proceeds payable upon the employee's death. The Multiple Employer Plan purported to be a welfare benefit fund that met the exception provided by section 419A(f)(6) from contribution deduction limitations imposed under sections 419 and 419A. Section 419A(f)(6) applies only to contributions to a plan to which more than one employer contributes and to which no employer normally contributes more than 10 percent of the total contributions contributed to the plan by all employers. Furthermore, the exception applies only if the plan does not maintain experience-rating arrangements with respect to individual employers. A plan does not meet the requirements of section 419A(f)(6) unless 10 or more employers contribute to a single pool of funds, and that single pool of funds is for the use of the group of employers as a whole (e.g., to pay the claims of all employees covered under the plan). Booth et al. v. Commissioner, 108 T.C. 524 (1997).

Participating employers made contributions to the Multiple Employer Plan, which the Plan Trustee used to purchase life insurance policies from third-party insurance carriers on the lives of the employer's employees, owners, or other persons. Under the terms of the arrangement, the policies were owned by the Beta Multiple Employer Welfare Benefit Plan and Trust, which utilized a non-exempt trust to hold the plan assets. Each covered employee selected the beneficiary of the death benefits payable under the MEP upon the employee's death. The insurance policies were generally types of life insurance policies in which a portion of policy premiums are allocated to a cash value account within the policy that accumulates as premiums are paid and interest or other investment accruals are credited by the issuer. These types of policies are commonly referred to as Whole Life, Universal Life (UL) or Variable Universal Life (VUL).

The Plan Sponsor, Designs for Finance, Inc. ("DFF"), amended the Multiple Employer Plan to create the Single Employer Plan, an arrangement under which a separate single employer plan is provided for each participating employer. A common trust holds the plan assets of each employer's single employer plan. The Multiple Employer Plan assets allocated to the individual single employer plans remained with the Trustee of the Multiple Employer Plan, North Fork Bank, and a "common administration trust" was established to hold the plan assets of each employer's single employer plan. However, under the Single Employer Plan, there is separate accounting with respect to the participants of each employer's single employer plan.

The Multiple Employer Plan assets allocated to single employer plans were no longer subject to claims relating to employees of other employers. In other words, assets attributable to amounts previously contributed to the Multiple Employer Plan (as well as

Case ID: 121000444

| Form 886-A (REV. JANUARY 1994) | EXPLANATION OF ITEMS Rev. January 2008 | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER 23-2965124 | YEAR/PERIOD ENDED December 31, 2007 |

assets attributable to subsequent contributions to an employer's single employer plan) were held for the exclusive benefit of the employee(s) of the employer who had contributed such amounts. Further, these assets were held without any risk, which purportedly existed under the Multiple Employer Plan, that the assets could be used for the employees of other employers.

Both the Multiple Employer Plan and the Single Employer Plan provided death benefits funded through cash value life insurance policies. Although the Beta Individual Employer Arrangement allowed for the provision of other benefits, a July 13, 2005, opinion letter to DFF states that as of that date, the Single Employer Plan provided no sick and accident benefits, no disability or severance benefits, or any "other benefits" similar to life, sick or accident benefits, and there was no intention to provide such benefits.

There are at least three Plan and Trust Agreements for the Beta Individual Employer Welfare Benefit Plan and Trust dated January 1, 2003. All versions are signed by the Plan Sponsor, DFF, and the Trustee, North Fork Bank; two versions provide an execution date of December 1, 2003, and the third is undated. The signatures are unique to each document. There is also an amended Single Employer Plan and Trust Agreement dated January 1, 2006, which was executed on December 30, 2006.

A Multiple Employer Welfare Benefit Trust Severance Agreement effective January 1, 2003, was signed by DFF, North Fork Bank and Pointe Benefit Consultants. There is no date on the Agreement that corresponds to the signatures and no information has been provided regarding the date the Severance Agreement was signed. The Severance Agreement states that the Beta Multiple Employer Plan "contains more favorable features and flexible administration terms for covered employers and their participating employees, than would a Plan which meets and complies with all of the requirements of the regulations" for section 419A(f)(6). As a result, the parties to the Agreement have decided "to sever the existing BETA Plan and Trust into separate individual employer plans maintained under a common administration trust." The parties to the Agreement desire "to modify their participation in the BETA Plan and continuing under the newly established single employer format with Master Trust Agreement." The Agreement further states that Pointe Benefit "established a common 419(e) trust for Plan years subsequent to December 31, 2003," contributions to which "are subject to the funding limitations set forth under Section 419A(c) of the Code, as actuarially determined by an actuary."

Subsequent to the adoption of the Single Employer Plan, the BETA Plan Trustee requested that the ownership of the following life insurance policies be transferred from the "North Fork Bank as Trustee under the BETA Multiple Employer Welfare Benefit Plan & Trust dated 8/24/94 – 275 Broadhollow Road – Melville, NY 11747 TIN 11-6487640" to the "North Fork Bank as Trustee under the BETA Individual Employer Welfare Benefit Plan & Trust

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

dated 1/1/03 – 18530 Mack Ave., Suite 319 – Grosse Pointe Farms, MI 48236 TIN 11-3244499."

| Covered Employee | Insurance Co. | Policy # | Date Beneficiary<br>Change Was Requested |
|---|---|---|---|
| Raphael Gabay | Guardian | 4046410 | n/a |
| Melissa Newumann-Schwartz | Guardian | n/a | n/a |
| | | | |

The Taxpayer contributed the following amounts to the Beta Individual Employer Welfare Benefit Plan:

| Year | Contribution<br>(net of annual fee) |
|---|---|
| 2005 | $178,784 |
| 2006 | $250,000 |
| 2007 | $250,000 |

The Taxpayer deducted the following amounts on its Form 1120S in regard to the contributions it made to the Plan: (starting with 3rd year previous to penalty year)

| Year | Deduction | Line description<br>(if known) |
|---|---|---|
| 2005 | Pension, Profit<br>Sharing, Etc. | $178,784 |
| 2006 | Pension, Profit<br>Sharing, Etc. | $250,000 |
| 2007 | Pension, Profit<br>Sharing, Etc. | $250,000 |

The Employer had the ability to terminate its participation and cause the distribution of the insurance policies continued under the Single Employer Plan. The Beta Individual Employer Welfare Benefit Plan and Trust Agreement (the "Beta Individual Employer Agreement" or the "Agreement"), dated December 1, 2003, states that, under certain circumstances, the Employer "shall have the right to terminate [the] Plan and Trust as a withdrawal by delivering written notice of such termination to the Recordkeeper to be forwarded to the Trustee with properly authorized written directives." Beta Individual

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

Employer Agreement, Article 6.03: The circumstances required are any which meet one of five criteria pertaining to the status or operation of the employer's business. One of the criteria is merely that "[a] determination of the majority in ownership interest of the employer's equity by vote and value that the continuation of the Plan is not in the best interests of the Employer and its employees on an ongoing basis" has been made. Id. Thus, even assuming that the rules put forth in the Beta Individual Employer Agreement are followed in practice, an employer can terminate its participation in the Beta Individual Employer Arrangement (and thus terminate its single employer plan) at any time by providing written notice to the Arrangement.

The Beta Individual Employer Agreement provides for the distribution of the assets of the trust associated with an employer's single employer plan, upon an employer's termination of participation in the Beta Individual Employer Arrangement. See Beta Individual Employer Agreement Article 6.03(c). Under the Agreement, the distribution would be determined by a ratio based on either (1) an employee's PS-58 costs as compared to the total PS-58 costs of all covered employee's; or (2) an employee's compensation as compared to the total compensation of all covered employees. See Agreement Article 6.03(c)(iii).

The Employer did attach the Form 8886 Reportable Transaction Disclosure Statement to its return for the 2007 tax year. The Employer did file a copy of the Form 8886 Reportable Transaction Disclosure Statement to Office of Tax Shelter Administration for the 2007 year. The disclosures made were deemed inadequate due to lack of Promoter and Administrator information.

## LAW

**Section 6707A(a)** provides that "any person who fails to include on any return or statement any information with respect to a reportable transaction which is required under section 6011 to be included with such return or statement shall pay a penalty in the amount determined under subsection (b)."

**Section 6707A(b)** imposes a penalty for failing to disclose participation in a "listed transaction" in the amount of 75 percent of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal tax purposes). The amount of the penalty shall not exceed $200,000 and $100,000 in the case of a natural person and shall not be less than $10,000 and $5,000 in the case of a natural person for assessments made after December 31, 2006.

**Section 6707A (d) (1)** grants the Commissioner authority to rescind all or a portion of any penalty imposed under section 6707A if (1) the violation relates to a reportable transaction

DEPARTMENT OF THE TREASURY– INTERNAL REVENUE

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

that is not a listed transaction and (2) rescission of the penalty would promote compliance with the requirements of the Code and effective tax administration.

**Section** 6707A(c)(2) defines the term "listed transaction" to mean a reportable transaction which the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011."

**For Transactions Entered Into On Or After February 28, 2003 (Taxpayers May Rely on These Regulations For Transactions Entered Into On Or After January 1, 2003) and Before August 3, 2007 (T.D. 9046)**

All references to § 1.6011-4 are to that regulation as modified by TD 9046, 2003-1 C.B. 614.

Every taxpayer that has participated, as described in § 1.6011-4(c)(3), in a reportable transaction within the meaning of § 1.6011-4(b) and who is required to file a tax return must attach to its return for the taxable year described in § 1.6011-4(e) a disclosure statement in the form prescribed by §1.6011-4(d). Treas. Reg. § 1.6011-4(a).

A reportable transaction is a transaction described in § 1.6011-4(b)(2) through (7). The term transaction includes all of the factual elements relevant to the expected tax treatment of any investment, entity, plan, or arrangement, and includes any series of steps carried out as part of a plan. There are six categories of reportable transactions: listed transactions, confidential transactions, transactions with contractual protection, loss transactions, transactions with a significant book-tax difference, and transactions involving a brief asset holding period. Treas. Reg. § 1.6011-4(b)(1).

A listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction. Treas. Reg. § 1.6011-4(b)(2).

A taxpayer has participated in a listed transaction if the taxpayer's tax return reflects tax consequences or a tax strategy described in the published guidance that lists the transaction under §1.6011-4 (b)(2). A taxpayer also has participated in a listed transaction if the taxpayer knows or has reason to know that the taxpayer's tax benefits are derived directly or indirectly from tax consequences or a tax strategy described in published guidance that lists a transaction under § 1.6011-4(b)(2). Published guidance may identify other types or classes of persons that will be treated as participants in a listed transaction. Treas. Reg. § 1.6011-4(c)(3)(i)(A).

The term substantially similar includes any transaction that is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or

DEPARTMENT OF THE TREASURY-- INTERNAL REVENUE<br>Case ID: 121000444

| Form 886-A (REV. JANUARY 1994) | EXPLANATION OF ITEMS Rev. January 2008 | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER 23-2965124 | YEAR/PERIOD ENDED December 31, 2007 |

similar tax strategy. Receipt of an opinion regarding the tax consequences of the transaction is not relevant to the determination of whether the transaction is the same as or substantially similar to another transaction. Further, the term substantially similar must be broadly construed in favor of disclosure. Treas. Reg. § 1.6011-4(c)(4).

The disclosure statement for a reportable transaction, Form 8886 "Reportable Transaction Disclosure Statement" (or successor form), must be attached to the taxpayer's tax return for each taxable year for which a taxpayer participates in a reportable transaction. In addition, a copy of the disclosure statement must be sent to OTSA at the same time that any disclosure statement is first filed with the taxpayer's tax return.

If a transaction becomes a listed transaction after the filing of the taxpayer's final tax return reflecting either tax consequences or a tax strategy described in the published guidance listing the transaction (or a tax benefit derived from tax consequences or a tax strategy described in the published guidance listing the transaction) and before the end of the statute of limitations period for that return, then a disclosure statement must be filed as an attachment to the taxpayer's tax return next filed after the date the transaction is listed. Treas. Reg. § 1.6011-4(e)(2)(i).

Example From the Regulations - Treasury Regulation § 1.6011-4(e)(4) reads as follows:

(4) Example. The following example illustrates the application of this paragraph (e):
Example. In January of 2004, F, a domestic calendar year corporation, enters into a transaction that is not a listed transaction when entered into and is not a transaction described in any of the paragraphs (b)(3) through (7) of this section. All the tax benefits from the transaction are reported on F's 2004 tax return. On March 1, 2008, the IRS publishes a notice identifying the transaction as a listed transaction described in paragraph (b)(2) of this section. Thus, upon issuance of the notice, the transaction becomes a reportable transaction described in paragraph (b) of this section. The statute of limitations for F's 2004 taxable year is still open. F is required to file Form 8886 for the transaction as an attachment to F's next filed Federal income tax return and must send a copy of Form 8886 to OTSA. If F's 2007 Federal income tax return has not been filed on or before the date the Service identifies the transaction as a listed transaction, Form 8886 must be attached to F's 2007 return and at that time a copy of Form 8886 must be sent to OTSA.

## Notice 2007-83

In Notice 2007-83, the IRS alerted taxpayers and their representatives to some of the significant tax problems that may be raised by certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that are being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits.

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

The notice alerts taxpayers and their representatives that those transactions are tax-avoidance transactions and identifies certain transactions using trust arrangements involving cash value life insurance policies, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations and §§ 6111 and 6112 of the Code.

Notice 2007-83 describes generally arrangements that are sometimes referred to by the persons advocating their use as "single employer plans" and sometimes as "419(e) plans." Those advocates claim that employers' contributions to the trust are deductible under sections 419 and 419A as qualified costs2 but that there is not a corresponding inclusion in the owner's income.

Under these arrangements, the plan and trust documents indicate that the plan provides benefits such as current death benefit protection and certain welfare benefits to covered employees (including those employees who are also owners of the business). The arrangement provides that the benefits are payable while the employee is actively employed by the employer. The employer's contributions are often based on premiums charged for cash value life insurance policies. For example, contributions may be based on premiums that would be charged for whole life policies. As a result, the arrangements often require large employer contributions relative to the actual cost of the benefits currently provided under the plan.

Under these arrangements, the trustee uses the employer's contributions to the trust to purchase life insurance policies. The trustee typically purchases cash value life insurance policies on the lives of the employees who are owners of the business (and sometimes other key employees), while purchasing term life insurance policies on the lives of the other employees covered under the plan. It is anticipated that after a number of years the plan will be terminated and the cash value life insurance policies, cash, or other property held by the trust will be distributed to the employees who are plan participants at the time of the termination. While a small amount may be distributed to employees who are not owners of the business, the timing of the plan termination and the methods used to allocate the remaining assets are structured so that the business owners and other key employees will receive, directly or indirectly, all or a substantial portion of the assets held by the trust.

In addition, Notice 2007-83 identifies certain arrangements as listed transactions. Notice 2007-83 states that any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as "listed transactions" for purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112, effective October 17, 2007:

---

2  Section 419(c)(1) of the Code generally describes qualified costs as the sum of qualified direct costs plus additions to qualified asset accounts.

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

(1)    The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.

(2)    For determining the portion of its contributions to the trust or other fund that are currently deductible the employer does not rely on the exception in § 419A(f)(5)(A) (regarding collectively bargained plans).

(3)    The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated either:

    (a)    within the policy (for example, a cash value life insurance policy); or

    (b)    outside the policy (for example, in a side fund or through an agreement outside the policy allowing the policy to be converted to or exchanged for a policy which will, at some point in time, have accumulated value based on the purported premiums paid on the original policy).

(4)    The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts:

    (a)    With respect to any uninsured benefits provided under the plan,

        (i)    an amount equal to claims that were both incurred and paid during the taxable year; plus

        (ii)    the limited reserves allowable under § 419A(c)(1) or (c)(3), as applicable; plus

        (iii)    amounts paid during the taxable year to satisfy claims incurred in a prior taxable year (but only to the extent that no deduction was taken for such amounts in a prior year); plus

        (iv)    amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to uninsured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

    (b)    With respect to any insured benefits provided under the plan,

DEPARTMENT OF THE TREASURY– INTERNAL REVENUE

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

   (i) insurance premiums paid during the taxable year that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

    (ii) insurance premiums paid in prior taxable years that are properly allocable to the taxable year (other than premiums paid with respect to a policy described in (3)(a) or (b) above); plus

   (iii) amounts paid during the taxable year or a prior taxable year for administrative expenses with respect to insured benefits and that are properly allocable to the taxable year (but only to the extent that no deduction was taken for such amounts in a prior year).

 (c) For taxable years ending prior to November 5, 2007, with respect to life insurance benefits provided through policies described in (3)(a) and (b) above, the greater of the following amounts:3

   (i) in the case of an employer with a taxable year that is the calendar year, the aggregate amounts reported by the employer as the cost of insurance with respect to such policies on the employees' Forms W-2 (or Forms 1099) for that year, plus an amount equal to the amounts that would have been reportable on the employees' Forms W-2 for that year, but for the exclusion under section 79 (relating to the cost of up to $50,000 of coverage); or, in the case of an employer with a taxable year other than the calendar year, the portions of the aggregate amounts reported by the employer on the Forms W-2 (or Forms 1099) as described in (i), above, (or that would have been reported absent the exclusion under § 79) that are properly allocable to the employer's taxable year; and

    (ii) with respect to each employee insured under a cash value life insurance policy, the aggregate cost of insurance charged under the policy or policies with respect to the amount of current life insurance coverage provided to the employee under the plan (but limited to the product of the current life insurance coverage under the plan multiplied by the current year's mortality rate provided in the higher of the 1980 or 2001 CSO Table).

 (d) The additional reserve, if any, under § 419A(c)(6) (relating to medical benefits provided through a plan maintained by a bona fide association), but only to the extent amounts are not already included above in this paragraph (4); and only

---

3 For taxable years ending on or after November 5, 2007, the amount under this (4)(c) is zero.

Case ID: 121000444

| Form 886-A<br>(REV. JANUARY 1994) | EXPLANATION OF ITEMS<br>Rev. January 2008 | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Gabay Schwartz Ent & Assoc PC | TAX IDENTIFICATION NUMBER<br>23-2965124 | YEAR/PERIOD ENDED<br>December 31, 2007 |

to the extent that no deduction was taken for such amounts in a prior taxable year.

## GOVERNMENT'S POSITION

Notice 2007-83 identifies as a listed transaction any transaction that has all four of the elements listed in the Notice and any transaction that is substantially similar to such a transaction. As described below, the Plan has all of the elements described in Notice 2007-83.

The Plan involves a trust that purports to be a welfare benefit fund. Accordingly, the Plan has element (1) of Notice 2007-83.

The employers participating in the Plan do not rely on the exception in section 419A(f)(5) for collectively bargained plans. Accordingly, the Plan has element (2) of Notice 2007-83.

The trust associated with the Plan pays premiums on one or more cash value life insurance policies with respect to the participating employers. Accordingly, the Plan has element (3) of Notice 2007-83.

The Taxpayer has taken a deduction for its contributions to the Plan, in any taxable year of the Taxpayer, for which the Taxpayer has elected to provide for such taxable year only pre-retirement benefits. Thus, the Plan has element (4) of Notice 2007-83 for the following reasons. Because the only benefit provided under the Beta Plan is life insurance coverage (and that coverage is not a post-retirement life insurance benefit), and because the employer has deducted amounts that are greater than the aggregate amount described in paragraph (4)(b)(iii) and (4)(c) of Notice 2007-83, the employer has taken a deduction for a taxable year for its contribution to the Beta Plan that is greater than the sum set forth in element (4) of Notice 2007-83. Accordingly, the Beta Plan has element (4) of Notice 2007-83.

Thus, the Beta Plan arrangement has all four of the elements listed in Notice 2007-83. Accordingly, the Beta Plan arrangement is the same as, or substantially similar to, the transaction described in Notice 2007-83.

The Taxpayer entered the BETA Individual Employer Welfare Benefit Plan on or after February 28, 2003. Thus, the Taxpayer participated in a listed transaction during the tax year(s) ended December 31, 2005, December 31, 2006 and December 31, 2007. Thus, the Taxpayer had a requirement to attach a Form 8886, Reportable Transaction Disclosure Statement to the Taxpayer's return for the tax year ended December 31, 2007 and file a copy of the Form 8886 with the Office of Tax Shelter Analysis (OTSA).

Case ID: 121000444

# EXHIBIT "B"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAPHEAL GABAY, D.O                         :        CIVIL ACTION
                                           :
and                                        :
                                           :        NO.:
GABAY, SCHWARTZ, ENT AND                   :
ASSOCIATES, P.C.                           :
                                           :
Plaintiffs                                 :
                                           :
              v.                           :
                                           :
GLENN JOSEPHS, CPA                         :
                                           :
and                                        :
                                           :
FREIDMAN LLP                               :
                                           :
              Defendants                   :

## NOTICE OF CONSENT TO REMOVAL

TO THE CLERK:

        Please take notice that Defendant Freidman LLP consents to the removal of this action to
this court.

                              Respectfully submitted,
                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP


                    BY:    /s/ Wendy D. Testa
                           Wendy D. Testa
                           Atty. I.D. No.: 81705
                           Attorney for Defendant,
                           Freidman LLP
                           601 Walnut Street, Suite 1130 East
                           Philadelphia, PA 19106
                           Phone: (215) 627-6900
                           Facsimile: (215) 627-2665
                           Wendy.Testa@wilsonelser.com
                           Dated: October 31, 2012

763674.1

## CERTIFICATE OF SERVICE

    I, Wendy D. Testa, Esquire, attorney for Defendant, Freidman LLP, certify that I have served a true and correct copy of the foregoing Notice of Consent to Removal by filing the same on the court's ECF system on the date referenced below.


                                   */s/Wendy D. Testa*
                                   Wendy D. Testa, Esquire


Dated: October 31, 2012

763674.1